**STATE of Minnesota, Respondent,**

v.

**Glenn Melvin PETERSON, Appellant.**

**No. C4–82–1642.**

Supreme Court of Minnesota.

April 1, 1983.

William E. Falvey, Ramsey County Public Defender, and Michael F. Cromett, Asst. Public Defender, St. Paul, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

AMDAHL, Chief Justice.

This is an appeal out of Ramsey County District Court from a sentence of 30 months in prison imposed on defendant for the offense of simple robbery. The only issue is whether the trial court erred in computing the defendant's criminal history score for sentencing purposes. If the defendant had a criminal history score of three, as the trial court determined, then the trial court correctly sentenced defendant to an executed term of 30 months in prison. If defendant's true criminal history score was two, then defendant should have received a stayed 27-month sentence. The specific issue is whether it was error to assign defendant one point for his juvenile record. We hold that it was not error, and affirm the sentence.

Minnesota Sentencing Guidelines and Commentary, II.B.4. (1982) provides:

4. The offender is assigned one point for every two juvenile adjudications for offenses that would have been felonies if committed by an adult, provided that:
a. The juvenile adjudications were pursuant to offenses occurring after the offender's sixteenth birthday;
b. The offender had not attained the age of twenty-one at the time the felony was committed for which he or she is being currently sentenced; and
c. No offender may receive more than one point for prior juvenile adjudications.

The comments to II.B.4. state in relevant part as follows:

II.B.401. Commission research showed that an offender's record of felony-type juvenile adjudications was an important factor in judicial sentencing decisions for young adult felons. The juvenile history item is included in the criminal history index to identify those young adult felons whose criminal careers were preceded by repeated felony-type offenses committed as a juvenile. The Commission held several public hearings devoted to the issue of using juvenile records in the criminal history index. Those hearings pointed out differences in legal procedures and safeguards between adult and juvenile courts, differing availability of juvenile records, and differing procedures among juvenile courts. As a result of these issues, the Commission decided to establish rigorous standards regulating the consideration of juvenile records in computing the criminal history score.

II.B.402. First, only juvenile adjudications that would have been felonies if committed by an adult will be considered in computing the criminal history score. Status offenses, dependency and neglect proceedings, and misdemeanor or gross misdemeanor-type adjudications will be excluded from consideration.

II.B.403. Second, the juvenile adjudications must result from offenses committed after the offender's sixteenth birthday. The Commission chose the date of the offense rather than the date of adjudication to eliminate variability in application based on differing juvenile court practices.

II.B.404. Third, juvenile adjudications will be considered in computing the criminal history score only for adult offenders who had not attained the age of 21 at the time the felony was committed for which they are now being sentenced. Again, the Commission chose to examine the age of the offender at the time of the offense rather than at time of sentencing to prevent disparities resulting from system processing variations.

II.B.405. Fourth, the Commission decided that, provided the above conditions are met, it would take two juvenile adjudications to equal one point on the criminal history score, and that no offender may receive more than one point on the basis of prior juvenile adjudications. Again, no partial points are allowed, so an of-

fender with only one juvenile adjudication meeting the above criteria would receive no point on the criminal history score. The one point limit was deemed consistent with the purpose for including juvenile record in the criminal history—to distinguish the young adult felon with no juvenile record of felony-type behavior from the young adult offender who has a prior juvenile record of repeated felony-type behavior. The one point limit also was deemed advisable to limit the impact of adjudications obtained under a juvenile court procedure that does not afford the full procedural rights available in adult courts.

In *State v. Torgerson,* 329 N.W.2d 63 (Minn.1983), we interpreted II.B.4. in a case in which the defendant was adjudicated delinquent in a single proceeding for numerous separate felony acts committed on the day that he became 16 years old. Looking behind the single adjudication of delinquency, the trial court concluded that the defendant had committed multiple acts as a juvenile that would have been felonies if committed by an adult and that therefore the single adjudication of delinquency should count as two or more adjudications of delinquency. We concluded otherwise, stating:

> According to the Comments, a defendant should receive a criminal history point based on his juvenile record only if his juvenile record is one of "repeated felony-type behavior." The apparent intent is to allow use of a defendant's juvenile record in determining his criminal history score only if the defendant has twice been through the juvenile court system and twice been adjudicated delinquent on the basis of felony-type behavior. Defendant only went through the system once and apparently was not a repeat juvenile offender. Therefore, defendant's criminal history score should have been zero and he should have received a sentence of 24 months. Accordingly, we reduce defendant's sentence to 24 months.

329 N.W.2d at 65.

In this case the defendant clearly engaged in and admitted engaging in repeated felony-type behavior after he became 16 years old. Also, he had not become 21 at the time he committed the current offense. The only issue is whether the fact that the juvenile court referee did not use the words "adjudicated delinquent" on each of the four occasions defendant appeared before him after becoming 16 means that the four findings cannot be counted as adjudications of delinquency.

According to a juvenile court referee who testified at the sentencing hearing, the policy of the juvenile court in Ramsey County was that once a juvenile was adjudicated delinquent, the court had continuing jurisdiction over the juvenile until that jurisdiction was formally terminated or until the juvenile was no longer a juvenile. Thus, after his initial adjudication, whenever defendant was brought into court and admitted committing an offense, he was not formally adjudicated delinquent on the basis of the offense because he already had been formally adjudicated delinquent before.

In 1980 the reference law was amended to allow the establishment of a prima facie case for certification based on juvenile "adjudications" for felony offenses. Minn. Stat. § 260.125 (1980). Despite the juvenile court's policy of "once adjudicated, always adjudicated," the judge of the juvenile court in Ramsey County ruled that no adjudication could be used for the purpose of establishing a prima facie case for certification unless the findings and orders of the court expressly stated that an adjudication was made.

The trial court ruled that the prior findings were in effect adjudications within the meaning of Minnesota Sentencing Guidelines and Commentary, II.B.4. (1982) and that therefore he should receive one juvenile point in computing the criminal history score. We have concluded that we need not decide this issue because in 1981, when defendant was "adjudicated" in connection with a nonfelony offense, the referee retroactively adjudicated defendant for the four felony offenses that defendant admitted in 1979 and 1980.

In view of the issue raised but not decided in this case, the Sentencing Guidelines Commission might wish to consider amending the Guidelines to conform to Minn.Stat. § 260.125, which has been amended to refer to findings "pursuant to an admission in court or after trial" rather than "adjudications." *See* Minn.Stat. § 260.125, subd. 3(3)(1982).

Affirmed.